UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF
MARQUETTE
TRANSPORTATION COMPANY
GULF-INLAND, LLC, AS
OWNER AND OPERATOR OF
THE TOWING VESSEL FATHER
SEELOS, ETC.

CIVIL ACTION

NO.   13-5114

SECTION: R

## ORDER AND REASONS

Before the Court is the Tran claimants' "Memorandum of Law Supporting their Recovery of State Law Wrongful Death Damages,"[1] as well as an opposition "Memorandum of Law" filed by limitation plaintiff Marquette Transportation Company Gulf-Inland, LLC ("Marquette").[2] For the following reasons, the Court finds that decedent John Tran is a "nonseafarer" for purposes of the Supreme Court's holding in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996). Thus, *Yamaha* does not preclude the Tran claimants from seeking pecuniary and non-pecuniary damages under Texas's wrongful death and survival statutes.

---

[1] R. Doc. 96.

[2] R. Doc. 101.

## I.     BACKGROUND

The facts of this case, as alleged by the Tran claimants, are set forth in detail in a previous order.[3]  Briefly, this case arises out of a July 7, 2013 collision between the FATHER SEELOS, a towing vessel owned and operated by Marquette, and a vessel owned by John Tran, a self-employed commercial fisherman.  The collision occurred in the territorial waters of the State of Texas.  As a result, the fishing vessel was destroyed and John Tran was killed.

Marquette filed a complaint seeking exoneration from or limitation of liability under 46 U.S.C. § 30501, *et seq.*, and claimants Susan Tran (individually and as a personal representative of the decedent, John Tran, on behalf of herself and her minor child, Marsha Tran), Quoc Tran, Jeanie Tran, and Nancy Pham filed a claim against Marquette under general maritime law and the survival and wrongful death laws of Texas and/or Louisiana.  On April 20, 2016, the Court granted Marquette's motion for judgment on the pleadings on the Tran claimants' claims for unseaworthiness, negligent hiring and negligent retention, gross negligence, and punitive damages.  The Court dismissed the Tran claimants' unseaworthiness, gross negligence, and punitive damages claims with prejudice but permitted the Tran claimants to amend

---

[3] R. Doc. 98.

their pleadings to better allege their negligent hiring and negligent retention claims.

On April 19, 2016, the Tran claimants filed a memorandum of law on the issue of whether they may supplement remedies available under general maritime law with state-law remedies provided by Texas's wrongful death and survival statute.[1]  The Tran claimants argue that because John Tran was neither a Jones Act seaman nor a maritime employee covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), he was a "nonseafarer" and, as such, that his survivors may pursue state law remedies under *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996). Marquette filed an opposition "Memorandum of Law" on April 21.[2]  Marquette contends that because John Tran earned his living as a fisherman, he was a "person engaged in maritime trade."  According to Marquette, John Tran was therefore a "seafarer" under *Yamaha*, thus precluding his survivors from recovering non-pecuniary damages under state law.  The parties have fully briefed, and now ask the Court to decide, whether John Tran is a "nonseafarer" for purposes of the Supreme Court's *Yamaha* decision.

---

[1] R. Doc. 96.

[2] R. Doc. 101.

## II. DISCUSSION

It is undisputed that John Tran is neither a Jones Act seaman nor a longshore worker covered by the LHWCA.[3] Rather, both sides agree that John Tran was a self-employed commercial fisherman, who was killed in Texas's territorial waters. Both sides also agree that the Tran claimants' negligence claims against Marquette arise under general maritime law. At issue is whether, given these facts, the Tran claimants may supplement remedies available under general maritime law with state law remedies, including the remedies provided by Texas's wrongful death and survival statute. Citing the Supreme Court's opinion in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), the Tran claimants argue that John Tran was a "nonseafarer" and, as such, that his survivors may pursue state law remedies. Citing several district courts opinions interpreting and applying *Yamaha,* Marquette contends that because John Tran earned his living as a licensed crabber he was a person "engaged in maritime trade." According to Marquette, John Tran was therefore a "seafarer," and *Yamaha* precludes his survivors from recovering non-pecuniary damages under state law. At bottom, this dispute turns on

---

[3] Although Marquette contends in a footnote to its memorandum that "Tran could arguably be construed to be a seaman," it provides no argument and does not apply any law to the facts of this case in support of this position. *See* R. Doc. 101 at 5 n. 2.

4

competing interpretations of the key phrase in the *Yamaha* opinion.  A brief review of this area of law puts the parties' arguments into perspective.

The development of the law of wrongful death at sea proceeds from the case of *The Harrisburg*, 119 U.S. 199, 214 (1886), where the Supreme Court held that in the absence of a state of federal statute, general maritime law did not afford a wrongful death cause of action to the survivors of individuals killed on the high seas or in navigable waters.  As the Third Circuit has noted, "[t]he harshness of this rule prompted reaction from the federal judiciary and from Congress."  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 631 (3d Cir. 1994), *aff'd*, 516 U.S. 199, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996).  In the judiciary, some federal courts began to apply state wrongful death statutes in state territorial waters because there was no applicable federal statute.  *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 212 (1986); *Calhoun*, 40 F.3d at 631.  Eventually, Congress passed the Jones Act, 46 U.S.C. § 688, providing a wrongful death cause of action for the survivors of seaman killed in the course of their employment, and the Death on the High Seas Act ("DOSHA"), 46 U.S.C. § 761, which provides a federal wrongful death remedy for survivors of all persons, seaman and non-seaman, killed more than three nautical miles from the shore of any state or territory.  Collectively, these

developments ensured that a wrongful death remedy was available for most people killed on the high seas or in navigable waters.

Nonetheless, *The Harrison* remained problematic, creating several "incongruities," in the law of wrongful death in admiralty. "First, in territorial waters, general maritime law allowed a remedy for unseaworthiness resulting in injury, but not for death." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 26 (1990). In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), for example, the district court dismissed the suit of a longshore worker's widow because Florida's wrongful death statute did not encompass unseaworthiness as a basis for liability. If, however, the unseaworthy condition had only injured her husband, his recovery under the LHWCA would be premised on strict liability for unseaworthiness. Second, DOSHA allowed survivors of seaman killed on the high seas to pursue a wrongful death action based on unseaworthiness, while survivors of those killed inside territorial waters could not, unless a state wrongful death statute allowed recovery based on unseaworthiness. *Miles*, 498 U.S. at 26. Third, survivors of a so-called *Sieracki* seaman--that is, a longshore worker employed by an independent contractor but doing the work of a seaman aboard ship--could recover for death within territorial waters under applicable state statutes, while survivors of a Jones Act seaman could not. *Id.*

6

In an effort to remedy these incongruities, the Supreme Court overruled *The Harrisburg* in *Moragne*, 398 U.S. 375, and recognized a general maritime wrongful death cause of action under federal common law. 398 U.S. 375, 378 (1970).[4] The Court declined to define the nature and scope of the new cause of action, reasoning that "final resolution should await further sifting through the lower courts in future litigations." *Id.* at 408. The Court explained that "[i]f . . . subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts" should look to DOSHA and state wrongful death statues for guidance. *Id.*

After a period of "sifting" by lower courts, the Supreme Court addressed the issue of damages available under the nonstatutory wrongful death cause of action in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), holding that the mother of a seaman killed in state territorial waters has no claim for non-pecuniary damages under general maritime law. *Id.* at 29-30. The Court reasoned that under *Moragne* there are essentially two causes of action for the wrongful death of the seaman--a statutory action under the Jones Act based

---

[4] Although the specific holding of *Moragne* created a general maritime wrongful death remedy based on the unseaworthiness, the decision has since been interpreted as creating a wrongful death remedy for cases involving negligence. *See Miles v. Melrose*, 882 F.2d 976, 985 (5th Cir. 1989), *aff'd sub nom.*, 498 U.S. 19 (1990) ("In *Moragne*, the Supreme Court recognized a wrongful death action for negligence and unseaworthiness under general maritime law.").

7

on negligence, and an action under general maritime law based on unseaworthiness, in which liability is without fault. *Id.* at 29-30. For the sake of uniformity, the Court held that because the Jones Act limits the measure of damages for the death of a seaman to pecuniary loss, recovery under the non-statutory maritime death cause of action should be limited to pecuniary loss as well. *Id.* at 32-33. The Court explained that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.*

Following *Miles*, courts consistently held that the survivors of Jones Act seaman may not recover nonpecuniary damages under general maritime law. *See, e.g.*, *Savoie v. Chevron Texaco*, No. CIV.A. 04-1302, 2005 WL 2036740, at *2 (E.D. La. July 22, 2005) (collecting cases). The issue remained, however, whether non-pecuniary damages were available in cases involving non-seaman killed or injured in state territorial waters. *Id.*

The Supreme Court took up this issue in *Yamaha*, 516 U.S. 199 (1996), the case at the heart of the parties' dispute in this lawsuit. In *Yamaha*, the parents of a child killed in a jet ski accident in territorial waters sought state law remedies. *Id.* at 203. The manufacturer argued that, in the interests of

uniformity, the general maritime remedy provided by *Moragne* should occupy the field, ousting any remedies not available in admiralty. *Id.* at 209. The Court rejected this argument, noting that the uniformity analysis in *Moragne* "centered on the extension of relief, not the contraction of remedies." *Id.* at 213-14 (noting that "*Moragne* . . . showed not hostility to concurrent application of state wrongful death statutes" and that it is "difficult to see" how that opinion "can be taken as intent to preclude the operation of state laws that do supply a remedy"). Drawing a distinction between "seafarers" and "nonseafarers," the Court held that the general maritime wrongful death action does not preempt state remedies in cases involving the death of a nonseafarer in state territorial waters. The Court explained that, under *Miles*, "[w]hen Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided." *Id.* at 215. Reasoning that "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters," the Court found that there is no basis for displacing state remedies in cases of this nature. *Id.*

In the years since *Yamaha*, courts have divided on the meaning of the critical "nonseafarer" term in the Supreme Court's opinion--and therefore on which groups are entitled to supplement their remedies under general

9

maritime law with recovery under state wrongful death and survival statutes. The difficulty stems from an ambiguity within *Yamaha* itself. In a paragraph explaining the issue to be decided, the Court noted that it granted certiorari on the following issue: "Does the federal maritime claim for wrongful death recognized in *Moragne* supply the exclusive remedy in cases involving the deaths of nonseafarers in territorial waters?" *Id.* at 206. In a footnote to that sentence, the Court explained that "by 'nonseafarers,' we mean persons who are neither seaman covered by the Jones Act . . . nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act. . . ." *Id.* at 206 n. 2. Elsewhere in the *Yamaha* opinion, however, the Supreme Court described the scope of its holding by noting that state remedies are not displaced by the federal wrongful death action recognized in *Moragne* and remain applicable in cases where the claimant "was not a seaman, longshore worker, *or person otherwise engaged in maritime trade*." *Id.* at 202.

Based on this language, several district courts have concluded that a "person otherwise engaged in maritime trade," though not a Jones Act Seaman or a longshoreman covered by the LHWCA, is a seafarer precluded from pursuing non-pecuniary damages under state law. *See Savoie*, 2005 WL 2036740, at *3; *In re Complaint of Stone Energy Corp.*, No. CIV.A. 02-2969, 2003 WL 21730621, at *2-*3 (E.D. La. July 24, 2003); *Matter of Complaint*

10

*of Goose Creek Trawlers, Inc.*, 972 F. Supp. 946, 949-50 (E.D.N.C. 1997). Mirroring Marquette's arguments in this lawsuit, these courts have further held that the "otherwise engaged in maritime trade" language encompasses individuals who, like John Tran, are self-employed commercial fishermen. *See, e.g.*, *Goose Creek*, 972 F. Supp. 946, 950 (reasoning that "[b]y the very nature of his livelihood, [the commercial shrimper] was a 'person otherwise engaged in a maritime trade" and therefore a seafarer). Under this reasoning, John Tran would be deemed a seafarer under *Yamaha*, and the Tran claimants would be barred from supplementing federal maritime law remedies with non-pecuniary damages provided by Texas statutory law.

Other courts have rejected this approach (either expressly or implicitly), and adopted the *Yamaha* footnote's definition of "nonseafarer" as a person who is neither a Jones Act seaman nor a longshore worker or maritime employee covered by the LHWCA. Under this interpretation, "*Yamaha* stands for the proposition that nonseamen, *those not covered by Congressional statute*, pursuing a claim resulting from an accident in state territorial waters, may supplement that claim under general maritime law with applicable state law." *Liner v. Dravo Basic Materials Co.*, No. CIV.A.00-1908, 2000 WL 1693678, at *2 (E.D. La. Nov. 7, 2000) (emphasis added); *see also Doyle v. Graske*, 579 F.3d 898, 905 (8th Cir. 2009) ("A 'nonseafarer' is someone . . .

11

who is neither a seaman covered by the Jones Act . . . nor a longshore or harbor worker covered by the [LHWCA]."); *Am. Dredging Co. v. Lambert*, 81 F.3d 127, 130 (11th Cir. 1996) (characterizing a "nonseafarers" as people who "are not seamen or longshore workers"); *Zagklara v. Sprague Energy Corp.*, 919 F. Supp. 2d 163, 166 n. 2 (D. Me. 2013) (adopting definition of "nonseafarer" in the *Yamaha* footnote); *Trinh ex rel. Tran v. Dufrene Boats, Inc.*, 6 So. 3d 830, 840 (La. App. 1 Cir. 1/22/09) (adopting *Yamaha* footnote and holding that self-employed fisherman was a "nonseafarer" entitled to pursue state-law wrongful death remedies). An influential admiralty and maritime law treatise has taken the same position. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 8-3 (5th ed.) (describing a nonseafarer as "a person who is neither a seaman or a longshoreman").

The Court finds the second line of cases more persuasive and more consistent with the *Yamaha* opinion as a whole. Two primary considerations drive this conclusion. First, it is significant that in defining the term "nonseafarer" as used in the question presented for certiorari, the Supreme Court expressly tied seafarer status to coverage under federal maritime statutes. Under the definition in the *Yamaha* footnote, it is clear that Jones Act seaman and longshore workers covered by the LHWCA are seafarers, while individuals who are not covered by these maritime statutes are nonseafarers.

This definition is consistent with the reasoning and general thrust of the *Yamaha* opinion. As noted, *Yamaha*'s holding that state statutes apply to nonseafarers killed in territorial waters, despite the uniformity principle embodied in *Moragne* and *Miles*, turned on the fact that "*Congress has not prescribed remedies*" for wrongful deaths of this nature. *Yamaha*, 516 U.S. at 215. The Jones Act applies only to seamen; the LHWCA applies only to covered maritime workers; and DOSHA, while applying to nonseafarers, applies only to deaths on the high seas. Indeed, the Court noted that Section 7 of DOSHA shows special deference to state law by specifically stopping DOSHA from displacing state law in territorial waters. *Id.* at 215-16. For this reason, the Court found that supplementing general maritime remedies with state wrongful death and survival statutes in cases involving the death of nonseafarers in territorial waters is both logical and consistent with Congressional intent. *See id.* at 216 ("Taking into account what Congress sought to achieve, we preserve the application of state statutes to deaths within territorial waters."). That the Court grounded its holding on the absence of federal statutory remedies supports the conclusion that the key term that structures the *Yamaha* analysis, "nonseafarers," means individuals who are not covered by Congressional statute, as the footnote provides.

Second, assuming that the Supreme Court intended *Yamaha* to be internally consistent, rather than contradictory, it is easy to reconcile the "otherwise engaged in maritime trade" language in the body of the opinion with the definition set forth in the footnote. As noted, the footnote makes clear that "seafarer" includes Jones Act seaman and longshore workers covered by the LHWCA. Importantly, the LHWCA covers a range of non-seaman maritime employees. Section 902(3) of the LHWCA defines "employee" as "*any person engaged in maritime employment*, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker. . . ." 33 U.S.C. § 902(3) (emphasis added). Given the close parallel to the language in Section 902(3), it is reasonable to conclude that *Yamaha*'s reference to "person[s] engaged in maritime trade" merely refers to those maritime employees who are not longshore workers but are, nonetheless, covered by the LHWCA. *See Trinh*, 6 So. 3d at 841 (finding that the similarity of language supports a conclusion that the Supreme Court did not intend its holding in *Yamaha* to extend to general maritime wrongful death actions involving self-employed commercial fisherman). By contrast, if one takes the position that the Supreme Court intended to preclude state law remedies for all "person[s] otherwise engaged in maritime trade," including those who are

14

not a Jones Act Seaman or a maritime workers covered by the LHWCA, then the footnote is entirely contradictory and superfluous. Neither Marquette nor the federal district courts that it cites give a satisfactory explanation for interpreting the *Yamaha* opinion in this way.

For these reasons, the Court joins those courts that have held that, for purposes of *Yamaha*, a "nonseafarer" is someone who is "neither a seaman covered by the Jones Act . . . nor a longshore or harbor worker covered by the [LHWCA]." *Doyle*, 579 F.3d at 905 (quoting *Yamaha*, 516 U.S. 199, 202 n. 2). Turning to the facts of this case, it is clear that John Tran is a nonseafarer. Like the decedent in *Yamaha*, John Tran is not covered by the "comprehensive tort recovery regime" provided by Congressional maritime statutes. *Yamaha*, 516 U.S. at 215. As a self-employed commercial fisherman killed in Texas's territorial waters, he was neither a Jones Act seaman, an LHWCA maritime employee, nor a potential claimant under DOSHA. Accordingly, John Tran is a nonseafarer, and *Yamaha* does not preclude application of Texas statutes permitting recovery of non-pecuniary damages.

The Court notes, however, that although the Tran claimants argue that they are entitled to "all pecuniary and non-pecuniary damages" permitted

under applicable Texas laws,[5] they have not explained what those damages are or by whom they may be recovered. Nor have the Tran claimants directly addressed Marquette's argument that Susan Tran is the only proper party to assert a claim against Marquette in this litigation. Accordingly, the Tran claimants shall file a memorandum of law addressing these issues by April 27, 2016 at 5:00 p.m. Marquette shall file any response by April 28 at 5:00 p.m.

### III. CONCLUSION

For the foregoing reasons, the Court finds that because John Tran was a nonseafarer killed in Texas's territorial waters, he is a "nonseafarer" for purposes of the Supreme Court's holding in *Yamaha*. Thus, *Yamaha* does not preclude the Tran claimants from seeking pecuniary and non-pecuniary damages under Texas's wrongful death and survival statutes.

The Court ORDERS the Tran claimants to file a memorandum clarifying what Texas state-law damages they are seeking from Marquette (bearing in mind that the Court has already dismissed all punitive damages claims with prejudice), and identifying the individuals whom they believe to be the

---

[5] R. Doc. 96 at 12.

appropriate claimants, by **April 27, 2016 at 5:00 p.m.** Marquette shall file any response by **April 28 at 5:00 p.m.**

New Orleans, Louisiana, this  26th  day of April, 2016.

_____*Sarah Vance*_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE